John Rohrbach, Respondent, v. The Germania Fire Insurance Company, Appellant.

A legal or equitable title is not necessary to give an insurable interest in property: if one has a right which may be enforced against the property, and which is so connected with it that injury thereto will necessarily result in a loss to him, he has an insurable interest.

Plaintiff's wife, in whose employ he had been prior to marriage, executed to him after marriage an instrument acknowledging the indebtedness and stating it should be a lien upon her property. She died, leaving insufficient personal property to pay her other debts, and leaving but one piece of real estate which was principally valuable for the buildings thereon. Defendant issued to plaintiff a policy of insurance thereon. In an action upon the policy, *held*, that the instrument executed by the wife was one equity would enforce against the wife's estate; and that as the fund for its payment was only to be found in the real estate, and principally in the buildings insured, plaintiff had an insurable interest therein.

*Grevemeyer* v. *S. M. Ins. Co.* (62 Penn., 340) distinguished.

The policy, by its terms, insured plaintiff "on his two buildings." He was in possession at the time, and so continued up to the fire. *Held*, that, considered as a description of the property, it was not a warranty of ownership nor a material misrepresentation, and sufficiently indicated the property intended to be insured.

The policy contained clauses, in substance, that if the interest of the assured was not that of absolute and sole owner, it must be so expressed in the policy, otherwise it would be void; also, if the interest of the assured was not truly stated in the policy, it was void. The application was referred to in the policy, and was made a warranty. It stated that the assured had disclosed all the facts in relation to the property, so far as known, and to the question, "Is your title to the property absolute?" the only answer was, "His deceased wife held the deed." *Held*, that there was not a full and true statement of all the facts and circumstances as required, but the application tended to mislead; that therefore there was a breach of warranty which prevented a recovery.

Plaintiff fully stated all the facts to the agent of the company authorized to procure and submit applications and issue policies transmitted to him, and the statement in the application was entered therein by the agent, as his conclusion from the facts, and was all he deemed material. By the policy it was agreed that the agent should be deemed the agent of the assured, not of the company, under any circumstances. *Held*, that the knowledge of the agent was immaterial, and did not avoid the effect of the warranty.

As to whether these facts would authorize a reformation of the contract, *quære.*

*Rohrbach* v. *G. F. Ins. Co.* (1 N. Y. S. C. [T. & C.], 339) reversed.

(Argued February 17, 1875; decided May 25, 1875.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of plaintiff entered upon a verdict. (Reported below, 1 N. Y. S. C. [T. & C.], 339.)

This was an action upon a policy of insurance, by its terms insuring plaintiff upon "his two framed buildings" situate in the village of Jeffersonville, N. Y. Prior to the 28th June, 1868, the plaintiff had been in the employ of Margaretha Hartmann, and she was indebted to him for his labor and services. On that day they intermarried. On the thirtieth of the same month she executed and delivered to him an instrument, in writing, of the body of which the following is a copy:

"Jeffersonville, *June 30th*, 1868.

"I do hereby certify that I owe to John Rohrbach the sum of seven hundred dollars; and, also, twenty-five dollars for each and every month from the fourteenth day of July, 1863, and for every month he may live with me henceforth without any deduction whatsoever, which amount shall be a lien on my property."

She died intestate July 8th, 1868, leaving personal property of the value of $600, and a lot in said village upon which were the buildings in question. The principal value of the premises was in the buildings. One Armbrust was appointed administrator of her estate. Her indebtedness, other than that to plaintiff, was from $1,200 to $1,400. Her indebtedness to him was about $2,100. Plaintiff continued in the use and occupation of the buildings. In December, 1868, plaintiff negotiated for insurance on the buildings with one Brand, who was the agent of defendant, authorized to procure and submit applications, and to issue policies furnished him by defendant, signed by its officers, which were to be counter-

signed by him.   Plaintiff showed to Brand the said instrument, and related and explained to him all the facts and circumstances.   Plaintiff was a German, he could not read or write English.   Brand filled out the application, giving, as he testified, his conclusions and the facts he deemed material, and the plaintiff signed it.   The material part of the application was as follows:

" Application of John Rohrbach, of Jeffersonville, State of N. Y., for insurance against loss or damage by fire for the period of one year from 26th day of December, 1868, to 26th day of December, 1869, at noon, by the Germania Fire Insurance Company of the City of New York, in the sum of ten hundred dollars, upon the property specified below:

|  | Cash value. | Sum to be insured. |
|---|---|---|
| " On his frame 2-story building, occupied by insured as a dwelling and saloon.... ... | $4,000 | $1,000 |

" The applicant will answer fully the following question :

" Title — Is your title to the above property absolute ?   If not, state its nature and amount.

" Ans. His deceased wife held the deed.

" And the said applicant hereby covenants and agrees to and with the said company, that the foregoing is a just, full and true exposition of all the facts and circumstances in regard to the condition, situation and value of the property to be insured, so far as the same are known to the applicant, and the same is hereby made a condition of the insurance and a warranty on the part of the insured."

The policy contained these clauses, among others :

" 1. If an application, survey, plan or description of the property herein insured is referred to in this policy, such application, survey, plan or description shall be considered a part of this contract, and a warranty by the assured ; and any false representation by the assured of the condition, situation or occupancy of the property, or any omission to make known every fact material to the risk, or an overvaluation, or any misrepresentation whatever, either in a written application or otherwise, * * * or if the interest of the assured

in the property, whether as owner, trustee, consignee, factor, agent, mortgagee, lessee, or otherwise, be not truly stated in this policy, * * * and in every such case this policy shall be void."

" If the interest of the assured in the property be any other than the entire, unconditional and sole ownership of the property, for the use and benefit of the assured, it must be so represented to the company and so expressed in the written part of this policy, otherwise the policy shall be void."

" 11. It is a part of this contract, that any person, other than the assured, who may have procured this insurance to be taken by this company, shall be deemed to be the agent of the assured named in this policy, and not of this company under any circumstances whatever, or in any transaction relating to this insurance."

" And it is hereby mutually understood and agreed by and between this company and the assured that this policy is made and accepted in reference to the foregoing terms and conditions, and to the classes of hazards and memoranda printed on the back of this policy, which are hereby declared to be a part of this contract, and are to be used and resorted to in order to determine the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for in writing."

Other facts appear in the opinion. Defendant's counsel moved for a nonsuit on the ground of breach of warranty, and that plaintiff had not an insurable interest. The motion was denied, and defendant's counsel excepted.

*B. C. Chetwood* for the appellant. The statements contained in the application for insurance were warranties, and their fulfillment conditions precedent to a recovery. (*N. Y. Cent. Ins. Co.* v. *N. Pro. Ins. Co.*, 20 Barb., 474; *Jube* v. *Bklyn. F. Ins. Co.*, 28 id., 412; *Shoemaker* v. *Glen's Falls Ins. Co.*, 60 id., 84.) Plaintiff had no insurable interest in the property insured. (*Millman* v. *Neher*, 20 Barb., 37; *Grevemeyer* v. *So. Ins. Co.*, 62 Penn., 340; *Owen* v. *F. J.*

*S. Ins. Co.*, 57 Barb., 518.)    The statements as to ownership, etc., were warranties, and their falsity avoided the policy. (*Brown* v. *Catt. Ins. Co.*, 18 N. Y., 392; *Chase* v. *Ham. Ins. Co.*, 20 id., 52; *Jennings* v. *Chenango Co. Ins. Co.*, 2 Den., 75; *Sarsfield* v. *Met. Ins. Co.*, 45 How. Pr., 97; 61 Barb., 497; *Smith* v. *Em. Ins. Co.*, 25 Barb., 497; *Le Roy* v. *Market Ins. Co.*, 39 N. Y., 90; S. C., 45 id., 80; *Pierce* v. *Em. Ins. Co.*, 62 Barb., 636; *Bryce* v. *Lorillard Ins. Co.*, 55 N. Y., 240; *Springfield Ins. Co.* v. *Allen*, 43 id., 389; *Jenkins* v. *Quincy Ins. Co.*, 7 Gray [Mass.], 370; *Ribble* v. *Ham. Ins. Co.*, id., 163; *Marshall* v. *Col. Ins. Co.*, 7 Foster [N. H.], 157.)    Plaintiff's marriage extinguished the debt due him from his wife. (2 Kent's Com., [m. p.] 129; 4 Petersdorf Abr., [m. p.] 72.)

*J. A. Thompson* for the respondent.    Defendant having been shown the instrument upon which plaintiff rested his claim to an interest in the property insured, and having received a pecuniary consideration for the insurance, is estopped from questioning plaintiff's title. (*Plumb* v. *Catt. Ins. Co.*, 18 N. Y., 392; *Rowley* v. *Em. Ins. Co.*, 36 id., 550; *Mowatt* v. *Wright*, 1 Wend., 355; *Bilbie* v. *Lumley*, 2 East, 470; *Shotwell* v. *Murray*, 1 J. Ch., 51, 52; *Lyons* v. *Richmond*, 2 id., 51; *Storrs* v. *Baker*, id., 166; *Seymour* v. *C. and N. F. R. R. Co.*, 25 Barb., 284; *Corn Ex. Bk.* v. *Babcock*, 42 N. Y., 613; *Herkimer* v. *Rice*, 27 id., 163, 172.) It was not necessary to state in the policy the precise nature and extent of plaintiff's interest in the property insured. (*Tyler* v. *Ætna F. Ins. Co.*, 12 Wend., 507, 513; *Traders' Ins. Co.* v. *Roberts*, 9 id., 409; *Lawrence* v. *Van Home*, 1 Cai., 276; 3 Mass., 133; 4 id., 330.)    The defence that the policy did not state correctly plaintiff's interest in the property insured, is not available because not pleaded. (*McKyring* v. *Bull*, 16 N. Y., 297; *Monell* v. *Irving F. Ins. Co.*, 33 id., 429, 477; *Dingeldin* v. *Third Ave. R. R. Co.*, 37 id., 575; *Brazill* v. *Isbano*, 12 id., 9.)

FOLGER, J. The plaintiff cannot maintain this action, unless he had an insurable interest in the buildings which were the subject of the risk taken by the defendants, and which were destroyed by fire. He seeks to found such an interest, upon the instrument in writing, executed by his wife after her marriage to him.

Without entering minutely into a consideration of the effect of the marriage upon her pre-existing obligations and liabilities to him, it is sufficient to say, that the instrument executed by her was based upon a consideration adequate to uphold her express promise; that though made by a married woman it was in due form to affect her separate estate; and that though a transaction between a wife and her husband, yet equity would have upheld and enforced it in his favor against her, had she lived, and will enforce it against her estate now that she is dead. By it, he was an equitable creditor of her estate, at the time of the insurance; but he was no more than a general creditor. Though the instrument contains the phrase, " shall be a lien on my property," no specific lien was thereby created, and so far as that instrument had effect, no more than a general equitable lien, yet to be enforced and made specific by a judgment in an equitable action. The plaintiff stood thereby in no better plight, so far as having an insurable interest in the buildings, than would have stood a creditor of the deceased wife, who held a judgment only, rendered and docketed against her, which would have become a general lien upon her real property. He did not stand in so good plight, but for other facts now to be mentioned. She had died after giving the instrument, leaving personal and only this real estate; a person other than the plaintiff had taken out letters of administration thereon; the personal estate was by much insufficient to pay the debts against her; and this real estate, including the insured buildings, would in the due course of administration, for a space of at least three years from the granting of letters of administration, be liable to sale for the purpose of meeting her liabilities, and it was the only fund to which the plaintiff could look for payment;

the plaintiff was in the possession of the buildings, occupy-
ing them at the time of the fire.    Judgment creditors, if any,
would have had a preference in payment from the personal
estate (2 R. S., 87, § 27, subs. 3, 4), and, of course, the lien
acquired by the docketing of their judgments could not be
disturbed by the application of the administrator for leave to
sell the real estate, for the payment of debts, and the obtain-
ing of permission to do so.    But yet, the plaintiff had a right
to compel an accounting by the administrator (2 R. S., 92, § 52),
and a sale of the real estate (id., 108, § 48), for the payment
of his and other debts.    Thus, the real estate was to a degree
subject to the payment thereof, and was in fact, from the
slender amount of the personal property, substantially all that
he could look to for payment.    His position was not as good in
some respects as that of a judgment creditor, but it was not un-
like it; both had a right to have the real estate sold for the pay-
ment of their debts; for a certain space of time it could not
escape the exercise of that right; and it cannot be said that the
interest of a judgment creditor in the real estate, as an interest
in property, was greater or nearer than that of the plaintiff.
It was more manageable, but not more direct in the end.

The general definitions of the phrase " insurable interest,"
as given in the text books, are quite vague and not always
concordant.    (See 1 Arnould on Mar. Ins., 229; Runyon on
Life Ass., 16; Hughes on Ins., 30; 1 Marshall on Ins., 115;
1 Phillips on Ins., 2; id., 107; Sherman on Ins., 93; Parsons
on Merc. Law., 507; Parsons on Cont., 438; Angell on Ins.,
§ 56; Flanders on Fire Ins., 342; May on Ins., § 76.)    The
last cited author says, that an insurable interest sometimes
exists, where there is not any present property, any *jus in re*,
or *jus ad rem*, and such a connection must be established
between the subject-matter insured, and the party in whose
behalf the insurance has been effected, as may be sufficient
for deducing the existence of a loss to him, from the occur-
ence of an injury to it; and that the tendency of modern
decisions is to admit to the protection of the contract, whatever
act, event or property, bears such relation to the person seek-

ing insurance, as that it can be said, with a reasonable degree of probability, to have a bearing upon his prospective pecuniary condition. While on the other hand, the statement is, that the interest must be founded on some legal or equitable title; and if it be inconsistent with the only title which the law can recognize, it will not be deemed an insurable interest. (Marshall on Ins., *supra.*) But the result of a comparison of the text writers above cited, is, that there need not be a legal or equitable title to the property insured. If there be a right in or against the property, which some court will enforce upon the property, a right so closely connected with it, and so much dependent for value upon the continued existence of it alone, as that a loss of the property will cause pecuniary damage to the holder of the right against it, he has an insurable interest. Thus a mortgagee of real estate, though he hold also the bond of the mortgagor, has an insurable interest in the buildings; while a judgment creditor of the same mortgagor, his judgment being a lien upon the same real estate and the same buildings, is said not to have an insurable interest in them. The interest of the first is said to be specific, the interest of the latter general. As a general rule, the distinction may be sound. But I think it would be difficult, to show an appreciable practical difference in the pecuniary result to the two. If the mortgagor and judgment debtor should die leaving no personal property, and no real estate save that mortgaged, it principally valuable for the buildings upon it, and they should be burned, each must then look to the real estate, the lands alone, for a security for his debt; and if that be insufficient, each must with equal certainty, suffer a pecuniary disaster, resulting directly from the fire. What legal reason is there, why the one may not, as well as the other, protect himself by a contract of insurance?

In *Grevemeyer* v. *So. Mut. F. Ins. Co.* (62 Penn St., 340), it was held that a judgment creditor, whose judgment was taken for the purchase-money of the property burned, had no insurable interest. (See, also, *Conard* v. *At. Ins. Co.*, 1 Pet., 386.) The reason given is, that his lien was general,

and not specific; that he was not interested in the property, but in his lien only. His judgment was distinguished from a mortgage, in that the latter is a specific pledge of definite property, and the mortgagee has necessarily an interest in it; while the judgment is a general, and not a specific lien; so that if there be personal property of the debtor it is to be satisfied out of that; if there be not, then it is a lien on all his real estate without discrimination. And, citing *Cover* v. *Black*. (1 Barr, 493), it is said that a judgment creditor has neither *jus in re*, nor *jus ad rem*, as regards the judgment debtor's property. It seems to me, that the decision there goes very much upon the fact or the assumption, that the judgment debtor had other property, real and personal, to look to than the real estate damaged; and that it does not touch the case of a judgment creditor whose only or principal reliance for payment, was upon the property destroyed. That there need not be an existing *jus in re*, or *jus ad rem*, is declared by STORY, J., in *Hancox* v. *Fishing Ins. Co.* (3 Sum., 132–140); and also, that the right to pursue the debtor personally, does not deprive the creditor of an insurable interest. (Id.) In *Putnam* v. *Mercantile Mar. Ins. Co.* (5 Metc., 386), which was an insurance for a commission merchant, upon his expected commission from the sale of a cargo consigned to him to be sold, but in which cargo he had no other ownership or interest, it is said, that such an interest in property connected with its safety and its situation, as will cause the insured to sustain a direct loss from its destruction, is an insurable interest. The question is one of damages rather than title or possession; and it will be enough in general to show such a relation between the insured and the property, that injury to it will in natural consequence be loss to him; and it is not necessary to show that the insured is the legal or equitable owner. (*Wilson* v. *Jones*, L. R. [2 Exch.], 139; *Buck* v. *Ches. Ins. Co.*, 1 Pet., 151, * 163.) It will be perceived, that between the case cited from 62 Pennsylvania State (*supra*), and the case in hand, there are some features of distinction; here the debtor was dead; there

was no longer any personal liability, nor sufficient personal property to satisfy the debt; nor as may be inferred any other real estate, than that insured. A fund for the payment of the debt, was to be found only in this estate, and principally in the buildings insured. By force of these circumstances, and by operation of the statutes above referred to, this real estate was for a certain length of time, bound for the payment of this debt. As it was bound, as it alone was bound, as there was nought else, nor any person, liable for the debt, it is difficult to see why, in effect, the debt was not as if a specific lien upon this real estate. A lien, in its most extensive signification, is a charge upon property, for the payment or discharge of a debt or duty. A specific lien, is a charge upon a particular piece of property, by which it is held for the payment or discharge of a particular debt or duty, in priority to the general debts or duties of the owner. It is not the name of the right, which gives or refuses an insurable interest; it is the character of the right. A specific lien gives an insurable interest, because a loss of the particular property is at once seen to affect disastrously the specific lienor. But when a right to payment of a debt exists, which can be satisfied only from a particular piece of property, is there not the same result from the same cause? If I have a debt against another, and he have but one piece of real estate from which my debt may be made, and he die leaving no personal estate, though in technical language my lien may not be specific upon that real estate, it is true in fact, that there is a specific piece of property from which alone I may hope to satisfy my lien, and which is alone legally bound to satisfy it, and I am, practically, just like one to whom that piece of real property has been specifically pledged for a specific debt. If the latter, for that he may suffer pecuniary loss by the burning of that real property, has such an interest, as that he may insure against that burning, I have such an interest also, and I too may insure. The probability, nay the possibility, of the payment of the plaintiff's debt, out of the property of the deceased debtor,

rested entirely upon the contingency of this real estate remaining without serious impairment in value.

The reports of this State are meagre upon this precise question. In *Mapes* v. *Coffin* (5 Paige, 296), the complainant had levied upon chattels in the hands of an executor of the judgment debtor, which had been insured by the testator in his lifetime, and which were destroyed by fire after the testator's death, and after the levy. The chancellor, in a contest between judgment creditors, gave the avails of the insurance to the creditors who had made the first levy. Perhaps the levy upon the property made a specific lien upon it, and so the case does not much aid us. In *Mickles* v. *Roch. City Bk.* (11 id., 118), the defendants were judgment creditors of a manufacturing corporation, had issued several executions, had sold and bid in personal property, and advertised for sale the real estate. Pending the advertisement, they took out insurance on the buildings and fixtures in the joint name of themselves and the corporation. A few days after, the real estate was sold and bid in by the defendants. After that occurred a fire, with damage to the buildings and fixtures. The insurers repaired the buildings, and paid for the damage by fire to the fixtures. The real estate was never redeemed. There seems to have been no doubt made of there being an insurable interest in the creditors. By advertising the premises for sale, they came nearer making their judgment a specific lien thereupon, though it was still a general lien upon all other like property. In *Springfield F. and M. Ins. Co.* v. *Allen* (43 N. Y., 389–395, 396), it is said by ALLEN, J.: "An insurable interest may exist, without any estate or interest in the *corpus* of the thing insured;" "it was enough that" there be "a pecuniary interest in the preservation and protection of the property, and" that one "might sustain a loss by its destruction." I know of no decision in this State bearing more directly upon this precise question, than that in *Herkimer* v. *Rice* (27 N. Y., 163). The propositions advanced there are sufficient, if sustainable, or if to be taken as authority, to uphold an insurable interest in the plaintiff

in the case in hand. Denio, Ch. J., there says: "It is certain that the creditors had no estate whatever in the real property. In a technical sense they had no lien. But they had important rights connected with it, and a pecuniary interest in its preservation. * * * The law does not require that the assured shall have an estate or property in the subject of the insurance. * * * No property in the thing insured is required. It is enough, if the assured is so situated as to be liable to loss, if it be destroyed by the peril insured against. Creditors having no other means of enforcing their debts, but having a direct and certain right to subject the real estate to a sale for their benefit, have an interest as positive and absolute as one having a specific lien, or even as the owner himself. * * * The creditors, whether by simple contract or specialty, under our laws, are parties interested in the real estate, when there is a deficiency in the personal, for they have power to subject it to the payment of their debts." It is urged that these remarks are *obiter dicta,* and that the real question to be decided and which was decided in the case, was whether an administrator of an insolvent estate, had such an interest in the real estate of his intestate, as was insurable. *Dicta,* are opinions of a judge which do not embody the resolution or determination of the court, and made without argument, or full consideration of the point, are not the professed deliberate determinations of the judge himself (4 Burr., 2064–2068) ; *obiter dicta* are such opinions uttered by the way, not upon the point or question pending (*Rouse* v. *Moore,* 18 J. R., 407–419), as if turning aside for the time from the main topic of the case to collateral subjects. I think that no one who reads the opinion in *Herkimer* v. *Rice* can doubt that all which was said on the subject of a creditor of an insolvent estate having an insurable interest in the real property thereof, was the professed and deliberate determination of the learned Chief Justice, not hastily formed nor carelessly expressed; not by the way nor on a collateral question to that awaiting decision, but deemed essential to lead up to the solemn judgment rendered. The

direct question was, indeed, whether an administrator of an insolvent estate might insure its real property. But the reasoning of the opinion shows that this was deemed to depend upon whether the creditors of that estate had such an interest. After stating the question, he says: "It will be convenient to consider, in the first place, *whether the creditors themselves have such an interest;* and then, whether the *administrator can be said to represent that interest,* so as *to enable him* to make the *contract for the benefit of the creditors.*" Again, * * * "the creditors of an insolvent estate are generally numerous, and having no opportunity for concerted action, except through the executor or administrators, they could scarcely ever avail themselves of the advantage of insurance, unless by the agency of the representatives. If the administrators cannot insure, *the parties interested, the creditors,* will be excluded from a remedy which all other persons having a similar interest possess." He then proceeds to show that an agent or trustee may insure the interest of a party beneficially interested, and that the administrator, though not the trustee of the land, is a trustee of a power over it, such as is recognized by law, and says: "In this case it was sufficiently apparent, from the language of the receipt for the premium, that it was the interest of the creditors which was designed to be covered by the contract; the beneficiaries of the administrator were the parties intended to be protected; the insurers, therefore, must have seen and known that it was the interest of the creditors * * * which it was the object of the policy to protect, * * * and which was the subject of the contract." There is more to the same effect; and the opinion is based upon the ground that the administrator is the representative of the creditors. Indeed, but for there being creditors, the administrator would have no concern in the land, and the concern he has with it is, that they through him may dispose of it for the payment of their debts. *Herkimer* v. *Rice* was a case in which there was full argument and consideration. I consider it gives reasons, as well as authority, for the determination of the question now in consider-

ation. It has often been cited as an authority, and at times as authority for the power of an executor or administrator to insure, as having, or as representing an insurable interest, holding it for the beneficiaries under the will, or in the intestate's estate. (*Savage* v. *Howard Ins. Co.,* 52 N. Y., 502.) In *Clinton* v. *Hope Ins. Co.* (45 N. Y., 454), it is cited by Andrews, J., as holding that when the personal estate of an intestate is insufficient to pay the debts, the administrator has an insurable interest in buildings, on the ground that he is the trustee of a power to sell the land for the benefit of creditors, and that *as the interest of the creditors is the subject of the insurance,* the administrator may insure for their benefit. The decision is there put aside as not a precedent for that then in hand, inasmuch as in that the personal property was sufficient to pay the debts, and therefore the administrator had no insurable interest. See also *Waring* v. *Loder* (53 N. Y., 581), where it is cited as authority for the proposition, that a mortgagor after he has sold the mortgaged premises has still an interest in it which is insurable, inasmuch as it stands between him and personal liability for the mortgage debt. The distinction is not perceptible, so far as this question is concerned, between a power to obtain indemnity against loss from being obliged to pay a debt owing to another, and against loss from failure to obtain payment of a debt owing to one's self. I conclude that a creditor of the estate of one deceased, whose personal property left is insufficient for the payment of his debts, has an insurable interest in the sole real estate of the deceased debtor, when it is plain that if it is damaged by fire a pecuniary loss must ensue to the creditor thereby.

The policy runs to the plaintiff, and by its terms insures him " on *his* two buildings." The defendant now insists, that it appeared upon the trial that the plaintiff was not the owner of the property insured at the time of the insurance, and that the complaint should, for that cause, have been dismissed on its motion. If I appreciate the point made, it is, that as the policy purports to insure " *his* two buildings," and as he did

not then own the two buildings which were afterwards burned, it cannot now be said that the policy was upon the two buildings destroyed. There is no doubt what property the plaintiff and defendant meant to insure, or that it was that which was subsequently burned, which was from the beginning of the transaction to the time of the fire in his possession. Simply as a description of property, in which light alone I am now treating the phrase, it was not a warranty of ownership, nor a material misrepresentation (*Niblo* v. *North American Fire Ins. Co.*, 1 Sandf., 551 ; *Traders' Ins. Co.* v. *Robert*, 9 Wend., 404; *Tyler* v. *Ætna F. Ins. Co.*, 12 Wend., 507); and simply as a phrase of description it indicated the purpose of the parties and what property was in their minds. The policy is not avoided in this view of it. There is nothing in *Springfield F. and M. Ins. Co.* v. *Allen* (*supra*), in conflict with this.

There is another view of the matter, however, in which the phrase and the circumstances in which it was used may be of more advantage to the defendant. By the fourth condition of the policy it is provided, "that if the interest of the assured in the property be any other than the entire, unconditional and sole ownership, for the use and benefit of the assured, * * * it must be so represented to the company, and so expressed in the written part of the policy, otherwise the policy shall be void." By the first condition it is provided, " that any omission to make known every fact material to the risk, or any misrepresentation whatever, or if the interest of the assured .in the property * * * be not truly stated in the policy * * * it shall be void." It is plain that these conditions have not been observed and kept by the plaintiff. The nature of his interest in the property was not expressed in the policy; and it was other than the ownership of it. The application was referred to in the policy ; and by the first condition of the policy, in such case the application became a warranty. In it, it is stated, that the plaintiff has disclosed all the facts in relation to the property so far as the same are known to him. But in answer to

the question. "Is your title to the property absolute? If not state its nature and amount;" the only answer given is: "His deceased wife held the deed." There is in that answer no affirmation of a falsehood, for his deceased wife did in fact hold the deed; but there is not a just, full and true exposition by the answer of all the facts and circumstances. The purport of the question and of the answer to it, would imply and convey the idea that he was in equity the owner, though the formal legal title was in the wife. The facts of his interest in or connection with the property were quite otherwise. The written application did not, by its representations, put the defendant in possession of the exact facts of the case; it did thereby tend to mislead as to the real situation of the property and the real interest of the plaintiff in it. The application, in this respect, was a warranty. (*Chaffee* v. *Catt. Co. Mut. Ins. Co.*, 18 N. Y., 376.) The truth of that warranty became a condition precedent to any liability to the plaintiff from the defendant (*Bryce* v. *Lorillard Ins. Co.*, 55 N. Y., 240); and it was a warranty and a condition precedent, not to be avoided by any consideration of whether it was essential to the risk or not, or whether or not it was an inducement to the defendant to enter into the contract. (Id.) It is very evident that the plaintiff did not intend a deception upon the defendant; nay, it is evident that he laid open to Brand, the agent of the defendant to procure and submit applications, and to issue policies when signed by the proper officers of the defendant and transmitted to him, all the facts of his connection with and interest in the property; and that the statements in the application were Brand's conclusions from those facts, and the omissions from it were of matters not deemed essential by Brand. It is, hereupon, urged by the plaintiff that the errors and omissions were those of the defendant. But the plaintiff and defendant have, in the policy, the contract between them, expressly agreed that Brand should be deemed the agent of the plaintiff and not of the defendant, under any circumstances whatever. It is true, that in *Plumb* v. *Catt. Co. Mut. Ins. Co.* (18 N. Y., 392), a rule is held which tends to the

shielding of the plaintiff, in this case, from the effect of his contract; but since then, it is held, that under such a contract as this the knowledge of such an agent of facts not stated in the application, is immaterial in the absence of fraud, or prevention of the statement of them by the applicant. (*Chase* v. *Ham. Ins. Co.*, 20 id., 52; where the case in 18 New York, *supra*, is considered and distinguished.) As to *Rowley* v. *Empire Ins. Co.* (36 N. Y., 550), cited in General Term opinion, it is much shaken in *Owens* v. *Holland Purchase Ins. Co.* (56 N. Y., 565–570). It is to be regretted that corporations, of the power and extended business relations with all classes in the community, which insurance companies have, should prepare for illiterate and confiding men contracts so practically deceptive and nugatory; and should, in cases as free from fraud and wrong on the part of the insured as this is, hold their customers to the letter of an agreement so entered into. I am aware that often the companies are made the victims of dishonest and designing persons, but I cannot agree that the remedy for that, is to refuse to be bound by the acts of agents of their own selection when dealing with simple and unlettered men. If there should be less greediness for business, and such care in the selection and appointment of agents as would insure the confidence of the companies in their capability, discretion and integrity, it would not need that there be laid upon unwise policyholders an agreement to take the burden of the opposite qualities in those put forward to them as actors for the insurers. But we must take the contracts of the parties as we find them, and enforce them as they read. By the one before us the plaintiff has so fettered himself as to be unable to retain, as the case now stands, the real essence of his agreement. Though he has frankly and fully laid before the actor between him and the defendant all the facts and circumstances of the case, he is made responsible for error in legal conclusions which he never formed, and which were arrived at by one in whom he trusted and whom he supposed to stand in the place of the defendant. The plaintiff claims that the answer of the

defendant contains no allegation which will permit it to avail itself of the defence just noticed. Without determining what is the condition of the pleading in that respect, it is enough to say that the facts, upon which the point is now made, were before the court, without objection from the plaintiff based upon the lack of averment in the answer; nor does it appear that any ruling of the court was put upon a deficiency in the allegations of the answer. (See *McKechnie* v. *Ward*, in MS.*)

Held to the letter and substance of his contract the plaintiff made a breach of a warranty and condition precedent, upon the truth of which his contract rested, and for that reason may not recover in this action as the facts now stand.

The complaint in this case contains certain allegations, and a prayer for judgment thereupon of a reformation of the contract. Whether, upon a new trial, these allegations and the proof which can be made under them will be sufficient for such a judgment we do not now declare.

The point made upon the averments in the proofs of loss, we need not closely consider at this time. The condition of the policy which is claimed to be violated is, that if the interest of the assured be other than the entire and sole ownership, the names of the respective owners shall be set forth in the proof of loss with their respective interests therein; and that all fraud, or attempt at fraud, by false swearing, shall cause a forfeiture of all claims on the company under the policy. The facts are not distinctly brought out on the trial as to the state of the title at the time of the fire. Though it appears that at the death of the plaintiff's wife she held all the title to the premises, it does not positively appear but that the title may have become the plaintiff's after her death and before the fire. The deed to the deceased wife having been shown, there is the presumption of the continuance of the title thereby created. No change had been shown, as I read the testimony, though the defendant's points state that it is claimed that the plaintiff bid in the premises at an auc-

* 58 N. Y., 541.

tion sale just before the fire. His statement in his proofs of loss is, that the property insured belonged to him. It is not plain that this would be a fraudulent and false statement, if there had been a judicial sale at auction before the fire and he had bid in the premises. As there is to be a new trial, it is better to leave this question to be determined on a fuller state of the facts.

The judgment appealed from must be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.