THE FRANKLIN FIRE INSURANCE COMPANY v. MARTIN.

1. An equitable title or interest of such a description that, if the property be destroyed, it will necessarily result in a loss to the insured, is an insurable interest.

2. A party in possession of the premises insured under a valid and subsisting contract for a conveyance, has an insurable interest, and he is not guilty of a misrepresentation or breach of warranty, so as to avoid the policy, if, in the application, he describes the property as his property, unless there be something in the policy or conditions of insurance requiring the true state of the title to be disclosed.

3. The description, in a policy, of the property insured, as a building "occupied as a dwelling and boarding-house," defines the character of the risk assumed, and is a warranty that the property, at the time of the insurance, was occupied for that purpose.

4. Where the conditions of insurance provide that "if the assured shall cause the building, goods, or other property insured, to be described in his policy otherwise than they really are, so that they be charged at a lower premium than is therein proposed, the policy shall be of no force," the policy is not avoided simply by a misdescription of the property. To effect an avoidance of the policy, the misrepresentation must have been operative to cause the insurance to be effected at a lower rate than it otherwise would be subject to; and that question is one to be left to the jury.

5. A written contract of insurance cannot be altered or varied by parol evidence of what occurred between the insured and the agent of the insurer at the time of effecting the insurance. Such evidence will not be received to raise an estoppel *in pais*, which shall conclude the insurer from setting up the defence that the policy was forfeited by a breach of the conditions of insurance.

6. A policy described the property insured "as occupied as a dwelling and boarding-house"—in fact, it was occupied as a country tavern, and there was kept for use a billiard-table, in a room back of the bar-room. The property continued to be so used until the fire occurred. In the conditions of insurance, dwelling-houses and taverns were classified as extra hazardous, and billiard-rooms were named as specially hazardous, each being subject to higher premiums than ordinarily hazardous risks. *Held*, that evidence that the application for insurance was prepared by the agent of the insurer, and that he knew, at the time of the application, that the property was occupied as a tavern, and that a billiard-table was kept in it for use, could not be received for the purpose of showing that, under the description of a dwelling and boarding-house, the parties intended to insure the premises as they were then, in fact, being used.

Franklin Fire Insurance Co. v. Martin.

7. Cases on the subject of the admissibility of parol evidence in actions on policies of insurance, cited and commented on.

8. The erroneous use of the general replication *de injuria*, cannot be reached by general demurrer, and is cured by verdict.

On error to the Supreme Court.

This action was brought upon a policy of insurance, under seal, bearing date April 27th, 1870, issued to the plaintiff as owner of the property insured. At the trial before the Circuit, a verdict was had by Martin, the plaintiff below, whereupon this writ of error was sued out by the defendant. Errors were assigned upon the record, and upon the proceedings at the trial.

The property insured was described in the policy as "his two-story and attic frame, shingle-roof building, occupied as a dwelling and boarding-house, situate on the west side of the Bergen Point plank road, in Bayonne, Hudson county, New Jersey. Above building known as the 'Mansion House.'"

Among the conditions of insurance were the following:

"If the assured shall cause the buildings, goods, or other property to be described in this policy otherwise than as they really are, so that they be charged at a lower premium than is herein proposed, this policy shall be of no force; or, if the risk shall be increased by any means whatever, within the control of the assured, during the continuance of the insurance, and notice thereof be not given to the company, and such increased risk be allowed and endorsed thereon, this policy shall be of no force.

"Property held in trust, or on commission, must be insured as such, otherwise the policy will not cover such property. And in case of loss, the names of the respective owners, &c.

"If the interest in the property to be insured be a leasehold interest, or other interest not absolute, it must be so represented to the company, and expressed in the policy, in writing, or otherwise the insurance shall be void.

"NOTE.—By property held in trust, is intended property held under a deed of trust or will, or under the appointment

of a court of law, or property held as a collateral security, in which latter case the company shall be held liable only to the extent of the interest of the assured in such property."

For the plaintiff in error, *F. Kingman* and *C. Parker*.

*Contra, J. B. Vredenburgh.*

The opinion of the court was delivered by

DEPUE, J.   After the policy was issued and delivered, there were written on its face the words, " May 31st, 1870. Loss, if any, payable to Garret G. Vreeland, mortgagee." It was assigned for error, that the action should have been brought by Vreeland.   These words amounted merely to a direction in advance, as to the mode of payment in case of a loss, and if the insurer had made payment accordingly, it would have been performance.   But the contract of insurance being made with the plaintiff, and he having an insurable interest, the action was properly brought in his name.   It was so held by the Supreme Court in deciding the demurrer in this case.   *Martin* v. *Franklin Fire Insurance Co.*, 9 *Vroom* 140.   After the opinion of the Supreme Court on the demurrer was announced, the plaintiff in error withdrew the demurrer and pleaded issuably.   The objection, therefore, does not appear on the record.   *D., L. & W. R. R. Co.* v. *Salmon*, 10 *Vroom* 299.

*Second.*  Another error assigned is, that the general replication *de injuria* was improperly pleaded to several of the defendant's pleas.   The erroneous use of this replication is an error in form only, which cannot be reached by general demurrer, (*Grafflin* v. *Jackson, ante p.* 440,) and is cured by verdict. *Com. Dig.*, " *Pleader*," *F*, 24 ; *Banks* v. *Parker, Hob.* 76 ; *Collins* v. *Walker, T. Raym.* 50 ; *Lytle* v. *Lee*, 5 *Johns.* 112.

*Third.*  It is contended that the plaintiff either had no insurable interest in the property, or had so misdescribed his interest as to avoid the policy.

The property was described in the policy as *his* property. The proof was that the insured had contracted to purchase the property of one Fowler, and had paid him all the pur-

chase money except $2000; that by his procurement, Joseph Wilson advanced for him that sum, and the conveyance was made by Fowler to Wilson, who gave to the plaintiff an agreement in writing, to convey to him on the repayment of the sum advanced; that the plaintiff had repaid the money advanced by Wilson before the policy was issued, and had been in the exclusive possession and control of the property from the time of the conveyance to Wilson, and had expended on it $7000 in improvements.

There was no substantial misdescription of the interest of the insured in the premises, and no artifice was used by him to conceal from the insurer the actual condition of the title. A person in possession under an agreement for a conveyance, has a substantial and an insurable interest. If the property be destroyed, it will be his loss, in contemplation of law. If he has paid the purchase money, the property is his property in fact, and its destruction by fire would be his loss, as much as if the formal legal title was in him. A party in possession under a valid and subsisting contract for a conveyance, is not guilty of a misrepresentation or breach of warranty, so as to avoid the policy, if, in the application, he describe the property as his property—*Columbian Ins. Co.* v. *Lawrence,* 2 *Pet.* 25; *S. C.,* 10 *Id.* 507; *Ætna Fire Ins. Co.* v. *Tyler,* 16 *Wend.* 385; *Hough* v. *City Ins. Co.,* 29 *Conn.* 10; *Insurance Co.* v. *Woodruff,* 2 *Dutcher* 541—unless there be something in the policy or conditions of insurance made part of it, requiring the true state of the title to be disclosed. *Rohrbach* v. *Germania Ins. Co.,* 62 *N. Y.* 47; *Wilbur* v. *Bowditch M. and T. Ins. Co.,* 10 *Cush.* 446; *Brown* v. *Williams,* 28 *Me.* 252.

There is nothing in the conditions of insurance, in this policy, making a disclosure of the actual state of the title obligatory on the insured. That part relating to property held in trust, and requiring it to be insured as such, aptly describes the state of Wilson's title (*Day* v. *Charter Oak Ins. Co.,* 51 *Me.* 91,) but is wholly inapplicable to the interest of the plaintiff in the property. The other part, requiring a leasehold or other interest not absolute to be represented to the company and

insured as such, was not violated. An equitable title or interest of such a description that if the property be destroyed, it will necessarily result in a loss to the insured, is an insurable interest, and will give the insurer the same right to recover under his policy as if he had the legal title. *Rohrbach* v. *Germania Ins. Co., supra.* In equity, the interest of the plaintiff was absolute. In *Hough* v. *City Fire Ins. Co., supra,* the interest of the plaintiff in the property insured, was an equitable interest under a contract to purchase. It was described in the policy as his property, and it was held by the court, under a condition of insurance precisely like that contained in this policy, that the condition had not been broken.

*Fourth.* In the policy, the property insured is described as a building occupied " as a dwelling and boarding-house." This description defines the character of the risk assumed, and is a warranty that the property, at the time of the insurance, was used for that purpose. *Dewees* v. *Manhattan Ins. Co.,* 6 *Vroom* 366. In fact, it was at that time occupied as a dwelling and boarding-house, and also as a country tavern, and in a room back of the bar-room there was kept for use a billiard-table. The property continued to be so used until the fire occurred.

In the conditions of insurance, it is stipulated that if the assured shall cause the buildings, goods or other property insured to be described in his policy otherwise than as they really are, so that they be charged at a lower premium than is therein proposed, the policy shall be of no force. In the classification of risks, drinking-houses and taverns were classified as extra hazardous, and subject to a higher premium than hazardous risks; and billiard-rooms were named in the specially hazardous class, subject to a still higher premium. Dwelling and boarding-houses were not mentioned in any special classification. The consequence of a misdescription of the use of the premises at the date of the insurance is prescribed by the condition mentioned. It does not avoid the policy simply for a misdescription in that respect. To accomplish that result, the misrepresentation must have been opera-

tive to cause the insurance to be effected at a lower premium than it would otherwise be subject to; and that question was properly left to the jury. *Columbian Ins. Co.* v. *Lawrence*, 2 *Peters* 46; 1 *Bigelow's Ins. Cas.* 264.

*Fifth.* The insurance was obtained through one Buckley, an agent of the company. The judge received evidence that he inspected the premises at the time of taking the proposals of insurance, and knew the manner in which they were then used, and left the question to the jury whether the parties themselves did not knowingly use the term boarding-house to describe the very thing that was insured; and if they did, in that view the knowledge of the agent was material: that if the agent, acting on his own knowledge, making his own survey, undertake to describe the building, it is his description of the risk, and if the company accept it, it agrees that the term used shall describe the risk as it existed.

The evidence in relation to the agent's knowledge of the actual condition of the property was competent on the question whether the assured, by the misdescription, in fact procured the insurance to be made at a lower premium than would otherwise have been demanded. But these instructions were erroneous. They left the jury to find from such knowledge by the agent that the company insured a country tavern under the description of a dwelling and boarding-house—thus making a different contract from that expressed on the face of the policy.

There is a distinction between a representation which is merely collateral to the contract of insurance, and a warranty or condition which is part of the contract itself. A representation collateral to the contract will not avoid the policy though it be untrue, unless it was fraudulently made; but the validity of the entire contract depends upon the truth or fulfilment of the warranties and conditions. *Dewees* v. *Manhattan Ins. Co.*, 5 *Vroom* 247. Where the defence is that a representation collateral to the contract was false, and was fraudulently made, the gist of the defence is the fraud of the plaintiff by which the insurer was misled, and induced to

make the contract of insurance.   To such a defence, proof
that the agent of the insurer had knowledge of the true state
and condition of the premises, is a complete answer; for with
such knowledge no deception is practiced.   *Marshall* v. *Colum-
bian Mut. Fire Ins. Co.*, 7 *Foster* 157 ; *Protection Ins. Co.* v.
*Harmer*, 2 *Ohio St. R.* 452; *Patten* v. *Insurance Co.*, 40 *N. H.*
375; *State Mutual Ins. Co.* v. *Arthur*, 30 *Penn. St.* 315.   A
different rule prevails with  respect to a warranty contained in
the policy; if it is in fact not complied with, the contract falls,
without regard to the knowledge of the insurer of the actual
condition of the property insured.   This distinction between a
representation collateral to the contract and a warranty which
is part of it, is taken in *State Mutual Ins. Co.* v. *Arthur, supra*,
and it was there held that knowledge of the insurer or its
agent of the exact state and condition of the premises will
relieve the insured from the consequences of a false or imper-
fect representation, but not as against a warranty not com-
plied with.

If the proposal for insurance be prepared by the agent of
the company, and he misdescribe the premises, with full
knowledge of their actual condition, and there be no fraud or
collusion between the agent and the insured, the contract of
insurance may be reformed in equity, and made to conform to
the condition of the premises as they were known to the
agent.   *Collett* v. *Morrison*, 9 *Hare* 162; *In re Universal Non-
Tariff Fire Ins. Co.*, L. R., 19 *Eq.* 385 ; *Malleable Iron Works*
v. *Phœnix Ins. Co.*, 45 *Conn.* 465 ; *Woodbury Savings Bank*
v. *Charter Oak Ins. Co.*, 31 *Id.* 517 ; *Maher* v. *Hibernia Ins.
Co.*, 67 *N. Y.* 283.   But in an action at law upon the policy,
the rights of the parties must be determined by the contract
of insurance, which cannot be altered or modified by extrin-
sic evidence of a different agreement, to be established from a
knowledge of the insurer or its agents of the actual condition
of the property insured.   *Dewees* v. *Manhattan Ins. Co.*, 6
*Vroom* 366.   When the insurer defends on the ground of a
breach of warranty, it is no answer that he knew that such
warranty was not in fact true.   *Columbia Ins. Co.* v. *Cooper*,
50 *Penn. St.* 331.   Thus, it being stipulated in the conditions

of insurance that a false description of the property insured should avoid the policy, it was held that a misdescription defeated the plaintiff's right to recover under it, though the statements were known to be false by the insurer's agent who prepared the description, and informed the plaintiff that in that respect the description was immaterial. *Smith* v. *Cash Mut. Ins. Co.,* 24 *Penn. St.* 320. Evidence is not competent in an action on the policy to show that the matter complained of as a breach of warranty was mentioned to the agent at the time of the application, and that he said it was of so little consequence that it need not be mentioned in the policy. *Loehner* v. *Home Mut. Ins. Co.,* 17 *Mo.* 247. Nor will it be received to show that the insured informed the agent of the exact condition of his title, and that the agent filled out the application in his own language. *Hough* v. *City Fire Ins. Co.,* 29 *Conn.* 10. The decided weight of authority is against the admission of such evidence as a clear violation of the salutary rule of law, that all prior statements are merged in the concluded contract, and that a contract put in writing cannot be added to or altered by parol testimony. *Barrett* v. *Union Mut. Ins. Co.,* 7 *Cush.* 175; *Lowell* v. *Middlesex Ins. Co.,* 8 *Id.* 127; *Jenkins* v. *Quincy Mut. Ins. Co.,* 7 *Gray* 370; *Kibbe* v. *Hamilton Mut. Ins. Co.,* 11 *Id.* 163; *Jennings* v. *Chenango County Ins. Co.,* 2 *Denio* 75; *Rohrbach* v. *Germania Ins. Co.,* 62 *N. Y.* 47; *Columbia Ins. Co.* v. *Cooper,* 5 *Penn. St.* 331; *Sheldon* v. *Hartford Fire Ins. Co.,* 22 *Conn.* 235. Many of the cases to the same effect are cited by the Chief Justice in his opinion in *Dewees* v. *Manhattan Ins. Co.,* as reported in 6 *Vroom* 366, which, in itself, is a weighty authority against the competency of such evidence.

In *Sheldon* v. *Hartford Fire Ins. Co., supra,* it was held that where the policy and survey constituted a contract between the parties, and there was no imperfection or ambiguity in the contract, evidence of parol representations made to the agent prior to the issuing of the policy could not be received to explain or qualify the contract. (See, also, *Glendale Mfg. Co.* v. *Protection Ins. Co.,* 21 *Conn.* 19–37.) In *Peck* v. *N. L.*

*Mut. Ins. Co.*, 22 *Conn.* 575, the evidence was received not to vary the terms of the policy, but for the purpose of rebutting the presumption that the policy was a wagering policy. In *Bevin* v. *Conn. Mut. Ins. Co.*, 23 *Conn.* 244, it was admitted solely for the purpose of showing knowledge by the company of the insured's intention to travel, in violation of the conditions of the policy, to give effect to a waiver arising from subsequent receipts of premiums. In *Bebee* v. *Hartford Co. Mut. Ins. Co.*, 25 *Conn.* 51, proof of communications made by the insured to the agent was received to show that the insured had not fraudulently concealed facts material to the risk. In *Hough* v. *City Fire Ins. Co.*, 29 *Conn.* 10, the court had decided that there was no warranty of the condition of the title of the insured, and the evidence was considered legitimate to meet the claim of the company that the insured by a misrepresentation had rendered the insurance void. *Woodbury Savings Bank* v. *Charter Oak Ins. Co.*, 31 *Conn.* 517, was in equity on a bill to reform the policy, and enjoin the defence in an action at law upon it. In none of these later cases was Sheldon *v.* Hartford Fire Ins. Co. overruled; nor was parol evidence of prior transactions with the agent of the insurer admitted to vary the terms of the policy, or to make a contract different from that expressed therein.

The leading case in New York is *Jennings* v. *Chenango County Mut. Ins. Co.*, 2 *Denio* 75. This case held, in accordance with a series of cases beginning with *Vandevoort* v. *Columbian Ins. Co.*, 2 *Caines* 155, that parol evidence that the insured truly informed the agent of the insurer, who prepared the application, as to the situation of the premises, was not competent to vary a warranty on that subject, or save the insured from the consequences of a breach of the contract of insurance. This case was recognized as good law by the courts of that state, until the decision of *Plumb* v. *Cattaraugus Ins. Co.*, 18 *N. Y.* 392, where such evidence was held by a divided court to be admissible, not to change the contract, but to produce the same result under the guise of an equitable estoppel. Plumb *v.* Cattaraugus Ins. Co. was

followed in *Rowley* v. *Empire Ins. Co.*, 36 *N. Y.* 550. It was justly criticised and condemned as founded on erroneous views, by the Chief Justice in *Dewees* v. *Manhattan Ins. Co.*, as reported in 6 *Vroom* 366 ; and with Rowley *v.* Empire Ins. Co., has been greatly shaken by subsequent decisions in the same court, if it was not practically overruled by *Rohrbach* v. *Germania Ins. Co.*, 62 *N. Y.* 47–63. In *Maher* v. *Hibernia Ins. Co.*, 67 *N. Y.* 283, reformation of the contract of insurance seems to have been regarded as the appropriate method of relief under such circumstances. The condition of the law on this important subject in that state is such that it would not be advisable to adopt it, or prudent to endeavor to follow the decisions of its courts. The discordant and irreconcilable decisions which have grown out of the departure from the law as held in *Jennings* v. *Chenango County Mut. Ins. Co.*, are cited by Judge Folger in *Van Schoick* v. *Niagara Fire Ins. Co.*, 68 *N. Y.* 438. Some of the conditions of the policy may be controlled by evidence of the knowledge of the parties at the time the insurance was effected, and others not ; but no rule or principle has been promulgated for ascertaining, in advance of the litigation, what stipulations in the contract belong to the one class or the other—a condition of the law sure to result from the effort to deal with contracts of this kind, in disregard of established rules of law, and acknowledged legal principles.

The Supreme Court of the United States has held that the policy of insurance issued by the company, and accepted by the insured, must be taken to be the final agreement of the parties, and that if by inadvertence or mistake, stipulated provisions were omitted, or provisions other than those intended were inserted, the remedy was in equity for the correction of the agreement, and that neither party could resort to the verbal negotiations preliminary to the execution of the policy, to contradict or vary its terms, or to ascertain what the contract really was. *Ins. Co.* v. *Lyman*, 15 *Wall.* 664 ; *Ins. Co.* v. *Mowry*, 96 *U. S.* 544. But in *Ins. Co.* v. *Wilkinson*, 13 *Wall.* 222, the same court, following Plumb *v.* Cattaraugus

Ins. Co.; and Rowley v. Empire Ins. Co., held that parol evidence that the application of the insured was prepared by the company's agent, and that he filled up, from inquiries made by himself, the answers to the interrogatories, the falsity of which was the breach of warranty relied on, was competent as a matter of estoppel. The only other cases cited for this decision were, *Combs* v. *Hannibal Ins. Co.*, 43 *Mo.* 148, which was itself decided on a following of the two New York cases above cited, and *Woodbury Savings Bank* v. *Charter Oak Ins. Co.*, 31 *Conn.* 526, which was a bill in equity for the reformation of the policy.

It is manifest that the theory that such parol evidence, though it may not be competent to change the written contract, may be received for the purpose of raising an estoppel *in pais*, is a mere evasion of the rule excluding parol testimony when offered to alter a written contract. A party suing on a contract in an action at law, must be conclusively presumed to be aware of what the contract contains, and the legal effect of his agreement is that its terms shall be complied with. Extrinsic evidence of the kind under consideration, must entirely fail in its object, unless its purpose be to show that the contract expressed in the written policy was not, in reality, the contract as made. A defendant cannot be estopped from making the defence that the contract sued on is not his contract, or that his adversary has himself violated it in those particulars which are made conditions to his rights under it, on the ground of negotiations and transactions occurring at the time the contract was entered into, unless the plaintiff is permitted to show, from such sources, that the contract, as put in writing, does not truly express the intention of the parties. The difficulty lies at the very threshold. An estoppel cannot arise except upon proof of a contract different from that contained in the written policy, and an inflexible rule of evidence forbids the introduction of such proof by parol testimony, when offered to vary or affect the terms of the written instrument. The subject has been so fully and forcibly dis-

cussed by Chief Justice Beasley, in Dewees v. Manhattan Ins. Co., that it is unnecessary to pursue it further.

Nor is the reasoning of the learned justice who delivered the opinion in Insurance Co. v. Wilkinson, that the admission of such testimony is rendered necessary by the manner in which agents are sent over the country by insurance companies, and stimulated by them to exertions in effecting insurance—which often leads to a disregard of the true principles of insurance, as well as fair dealing—any more satisfactory. It introduces into the administration of the law, the novel doctrine that the rules which regulate the admission of evidence fluctuate with the character of the agencies parties employ in transacting business, and upon that foundation, establishes an exceptional rule of evidence to be applied to an entire class of contracts, whether agents, ignorant, incompetent, or unscrupulous, were employed or not. It leaves the whole subject of contracts of insurance at the mercy of a kind of evidence which is regarded as too untrustworthy and unreliable ever to control contracts in writing.

The cases usually cited for the proposition that a contract of insurance is excepted out of the class of written contracts with respect to the admissibility of parol evidence, to vary or control the written contract, will be found, on examination, to be, to a large extent, those in which the proof has been received with a view to the reformation of the policy in equity, or to meet the defence that the contract was induced by false and fraudulent representations not embodied in the contract, or are the decisions of courts in which the legal and equitable jurisdictions are so blended that the functions of a court of equity have been transferred to the jury box. A distinction is sometimes made between policies issued by a stock company and those issued by a mutual company. This distinction is without any substance. In a mutual company, the insured, by taking out policies, become members of the company. But, nevertheless, a member of a corporation, and even a director, in dealing with the corporation, stand, with respect to their contracts, just the same as a stranger, (Stratton

v. *Allen*, 1 *C. E. Green* 229,) and the powers of agents of every kind of principals, to act for and bind their principals, are determined by the unvarying rule of ascertaining what authority is delegated to them. How the contract was effected, whether directly with the insurer or by the intervention of agents, is of no consequence. The question of the admissibility of the testimony does not relate to the method by which the contract was made. It concerns the rule of evidence by which the contract, however made, shall be interpreted.

Upon principle, it is impossible to perceive on what ground such testimony should be received. A policy of insurance is a contract in writing, of such a nature as to be within the general rule of law that a contract in writing cannot be varied or altered by parol testimony. If it be ambiguous in its terms, parol evidence such as would be competent to remove an ambiguity in other written contracts, may be resorted to for the purpose of explaining its meaning. If it incorrectly or imperfectly expresses the actual agreement of the parties, it may be reformed in equity. If strict compliance with the conditions of insurance, with respect to matters to be done by the insured after the contract has been concluded, has been waived, such waiver may, in general, be shown, by extrinsic evidence, by parol. Further than this, it is not safe for a court of law to go. To except policies of insurance out of the class of contracts to which they belong, and deny them the protection of the rule of law that a contract which is put in writing shall not be altered or varied by parol evidence, of the contract the parties intended to make, as distinguished from what appears, by the written contract, to be that which they have in fact made, is a violation of principle that will open the door to the grossest frauds. If, as was said by Judge Folger, in Van Schoick *v.* Niagara Fire Ins. Co., "a fact thoroughly well known, and comprehended by both sides, to the contract before it is delivered, may, by force of some condition, crouched unseen in the jungle of printed matter with which a modern policy is overgrown, make a defence for the company, after the catastrophe and damage have happened,

against which it professes to guard," the remedy is with the legislature to prescribe what conditions only shall be valid, and to compel the printing of them in the policy, in such a manner as to be capable of being read and understood. A court of law can do nothing but enforce the contract as the parties have made it. The legal rule that in courts of law the written contract shall be regarded as the sole repository of the intentions of the parties, and that its terms cannot be changed by parol testimony, is of the utmost importance in the trial of jury cases, and can never be departed from without the risk of disastrous consequences to the rights of parties.

In the present case, the property insured was described in the policy as a dwelling and boarding-house. There was no ambiguity in the terms used, that justified resort to extrinsic evidence to explain the meaning of the contract. The effect given to the testimony on this subject, by the charge of the court, was to change the terms of the contract and reform it, and make another and a different contract. In this there was error, for which the judgment should be reversed.

*For affirmance*—DIXON, CLEMENT, LILLY.   3.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, REED, SCUDDER, VAN SYCKEL, WOODHULL, DODD, GREEN.   9.