OLIVE A. STERNAMAN, Appellant, *v.* METROPOLITAN LIFE
         INSURANCE COMPANY, Respondent.

1. CONTRACT — PARTIES CANNOT BY STIPULATION CREATE RELATION
WHICH THE LAW DECLARES NON EXISTENT.   While as a general rule
parties have the right to make such contracts as they see fit, this right is
restricted by legislation, public policy and by the nature of things; they
cannot stipulate that facts which the law declares establish a certain
relation not only do not establish that relation but establish directly the
opposite.

2. LIFE INSURANCE — WHEN MEDICAL EXAMINER IS AGENT OF THE
COMPANY — INEFFECTUAL STIPULATION CONSTITUTING HIM AGENT OF
INSURED.   The medical examiner of a life insurance company is the
agent of the company in making the examination, taking down the
answers and reporting them to the company, and is not the agent of the
applicant, although the latter agrees with the company that for that
purpose he shall be deemed to be his agent; the knowledge of the examiner
thus acquired, his interpretation of the answers given and his errors in
recording them are the knowledge, interpretation and errors of the com-
pany itself, which is estopped from taking advantage of what it thus
knows and what it thus does, when it issues a policy and accepts the
premium.

3. EVIDENCE — WHEN BENEFICIARY MAY SHOW ANSWERS ACTUALLY
GIVEN BY INSURED, BUT EITHER OMITTED FROM OR INCORRECTLY
STATED IN REPORT OF EXAMINER.   When an applicant for life insurance
makes truthful answers to all questions asked by the medical examiner,
who fails to record them as given and omits an important part, stating
that it is unimportant, the beneficiary may show in an action upon the
policy the answers actually given, in order to defeat a forfeiture claimed
by the insurer on account of the falsity of the answers as recorded, even
if it was agreed in the application that the medical examiner, employed
and paid by the insurer only, should not be its agent but solely the agent
of the insured and the latter warranted the truth of the answers as they
appeared in the application.

*Sternaman* v. *Met. Life Ins. Co.*, 49 App. Div. 473, reversed.

(Argued January 17, 1902; decided February 25, 1902.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
April 5, 1900, affirming a judgment in favor of defendant
entered upon a verdict directed by the court.

This action was brought to recover the sum of $1,000 alleged to be due on a policy of insurance issued by the defendant to the plaintiff, as beneficiary, upon the life of her husband, George H. Sternaman. The policy recites that the promise to insure was made in consideration of the statements contained in the application, all of which are referred to as warranties and made a part of the contract. The application consists of two parts, A and B. Part A, entitled "Application to the Metropolitan Life Insurance Company," consists of questions relating to the age, occupation, family history, etc., of Mr. Sternaman, all of which were truthfully answered. At the close of these questions and answers there appeared the following : "It is hereby declared, agreed and warranted by the undersigned that the answers and statements contained in the foregoing application, and those made to the medical examiner, as recorded in parts A and B of this sheet, together with this declaration, shall be the basis and become part of the contract of insurance with the Metropolitan Life Insurance Company ; that they are full and true and are correctly recorded and that no information or statement not contained in this application and in the statements made to the medical examiner, received or acquired at any time by any person, shall be binding upon the company, or shall modify or alter the declaration and warranties made therein ; that the persons who wrote in the answers and statements were and are our agents for the purpose and not the agents of the company ; and that the company is not to be taken to be responsible for its preparation or for anything contained therein or omitted therefrom ; that any false, incorrect or untrue answer, any suppression or concealment of facts in any of the answers, any violation of the covenants, conditions or restrictions of the policy, any neglect to pay the premium on or before the date it becomes due, shall render the policy null and void and forfeit all payments made thereon." Part A, dated April 25, 1896, was signed by both Mr. and Mrs. Sternaman, and witnessed by one Godson.

Part B, entitled " Statements made to the Medical Exami-

ner," consists of more than one hundred questions in fine print and the answers thereto, written in a blank space so contracted as to admit of an affirmative or negative answer with little or no opportunity for explanation. They relate to the health, past and present, of the applicant, the diseases he had been afflicted with and the physicians he had consulted. Among them were the following : " Have you ever had loss of consciousness ? No. Any personal injury ? No. Name and residence of your usual medical attendant ? Dr. Frost, Plymouth avenue. When and for what have his services been required ? For La Grippe. Have you consulted any other physician, and if so, when, and for what ? No." Part B closed as follows : " I hereby declare that the application to the Metropolitan Life Insurance Company on the reverse of this sheet for an insurance on my life, was signed by me, and that I renew and confirm my agreements therein as to the answers given above to the medical examiner, and I hereby declare that said answers are correctly recorded." Part B, dated April 27, 1896, was signed by Mr. Sternaman only and was witnessed by Dr. Langley, the medical examiner.

Upon the trial the defendant introduced evidence tending to show that some of the answers above quoted, made to the medical examiner, were not literally true. The plaintiff then proved that the application " was brought to the house of the insured by Dr. Langley, who was one of the defendant's medical examiners, and was designated and paid by the defendant; that the questions were asked of the deceased and the answers thereto in the application were filled in by the doctor in his own handwriting ; that the doctor took the application away with him after it had been signed by the plaintiff and said insured, and that the application has been in the possession of the defendant ever since. The plaintiff was present and heard the conversation between the doctor and the deceased at the time the application was filled in and signed."

The plaintiff was then sworn as a witness in her own behalf, but was not allowed to testify to the answers in fact made by her husband to the questions put to him by the medical

examiner. The plaintiff's counsel offered to prove by her "that in this interview, at this time and place, George H. Sternaman, the insured, told Dr. Langley, the medical examiner of the defendant, that he had suffered from malaria and was attended by Dr. McFadden of Buffalo, or rather that he went to Dr. McFadden's on several occasions, for malaria, to consult him, but that he was not at any time on that account laid up from work, and that he also doctored with Dr. McFadden, by going to his office for sore eyes, and also that at the time the beneficiary, the plaintiff here, was sick, and the insured did have sore throat or tonsilitis and that Dr. Tanner did attend him on three or more occasions at that time, but that he was not seriously ill, and that the deceased also stated to Dr. Langley that on one occasion he had been hurt in a fall from his bicycle, in that the skin from the palm of his hand had been injured and that he had been attended by Dr. Staples, mentioned in the proofs of loss, for that injury to the hand, and that he had during the period of his life, principally preceding his marriage, had peculiar spells, of which he did not know the name, in which he had partly lost consciousness, and that they were occasioned by any disappointment or reverse or mental pain that he suffered, and that his wife had consulted with Dr. Frost about them at one time and that Dr. Frost had said that they were not of very much importance, and that one of these different physicians whom he had gone to had said that he had catarrh of the stomach, and that Dr. Langley thereupon examined him and questioned him in regard to catarrh of the stomach and said that he did not have it, and that in regard to the other matters, being the malaria, the injury to the hand and the tonsilitis, Dr. Langley said that they were not of enough importance to insert them in the medical examination, and that these consultations with other physicians were not of so serious a character as to require mentioning, and further that all particulars of every consultation with every physician and every injury to his health or disease were fully disclosed to Dr. Langley in this interview,

prior to his filling out both parts of the application, and Dr. Langley said that they were, none of them, of sufficient importance to warrant being inserted, and that Dr. Langley thereupon filled out the application and it was signed. The plaintiff's attorney offered to make proof of each of these facts separately as well as a whole." This testimony was excluded upon the objection of the defendant that it was incompetent, immaterial and in violation of the contract, and that the plaintiff could not by parol vary the terms of the application and contract. Exceptions were taken to the rulings which excluded this evidence.

The insured died of multiple neuritis, a disease which apparently had no connection with the answers alleged to be false, although this did not expressly appear. (Da Costa's Medical Diagnosis, 128 ; Lippencott's Medical Dictionary, 673.)

The jury, as directed by the trial judge, rendered a verdict for the defendant, and the judgment entered thereon having been affirmed by the Appellate Division, one of the justices dissenting and another not voting, the plaintiff appealed to this court.

*Wallace Thayer* for appellant. On the pleadings as they stand the plaintiff could have recovered had she been permitted to show that the alleged breaches of warranty were not breaches of warranty. She was not obliged to allege in the complaint nor in a reply that although on the face of the application there appeared to be breaches of warranty, yet these breaches of warranty were excused or explained. (*Jacobs* v. *N. L. Ins. Co.*, 30 App. Div. 285 ; *Grattan* v. *Met. L. Ins. Co.*, 80 N. Y. 294.) The defendant's medical examiner occupied such a position toward defendant that it is not reasonable to suppose that the defendant intended to make him the agent for the insured in the transaction for any purpose, unless the clauses in the application expressly declare him — the medical examiner — to be the agent for the insured. (*Grattan* v. *Met. L. Ins. Co.*, 80 N. Y. 281 ; *Flynn* v. *C. L. Ins. Co.*, 78 N. Y. 568.) There is no clause in the warranty

2

which makes the medical examiner, if he be the one that inserts the answers, the agent for the insured so as to bind the insured by his wrong interpretation of what the questions mean and what are the substantially correct answers thereto. (*O'Farrell* v. *Met. L. Ins. Co.*, 22 App. Div. 500; *Bernard* v. *U. L. Ins. Assn.*, 14 App. Div. 142.) The defendant cannot transform an agent representing it into an agent for the insured so as to make the insured responsible for his mistakes. (*Bushaw* v. *W. M. Ins. Co.*, 8 N. Y. Supp. 423; *O'Farrell* v. *M. L. Ins. Co.*, 22 App. Div. 495.)

*Seward A. Simons* for respondent. The contract between the plaintiff and defendant clearly precludes the ruling made in the various cases cited by the appellant and is excepted from the rule therein suggested. (*McDonald* v. *J. H. Ins. Co.*, 17 App. Div. 16; *Ames* v. *M. L. Ins. Co.*, 40 App. Div. 465.) There is abundant authority to sustain the decision of the trial court. (*Hamilton* v. *F. M. L. Assn.*, 27 App. Div. 480; *Allen* v. *G. A. Ins. Co.*, 123 N. Y. 6; *N. Y. L. Ins. Co.* v. *Fletcher*, 117 U. S. 519; *Kabok* v. *P. Ins. Co.*, 21 N. Y. S. R. 203; *Maier* v. *F. M. L. Ins. Co.*, 78 Fed. Rep. 566; *Wilkins* v. *M. R. Ins. Co.*, 54 Hun, 294; *Bernard* v. *U. L. Ins. Assn.*, 14 App. Div. 142.) A principal may limit an agent's powers by notice to all parties dealing with him. (*Quinlan* v. *P. W. Ins. Co.*, 133 N. Y. 356; *McCoy* v. *M. L. Ins. Co.*, 133 Mass. 82; 16 Am. & Eng. Ency. of Law [2d ed.], 947; *C. L. Ins. Co.* v. *Chamberlain*, 133 U. S. 304.)

VANN, J. The decision of this appeal turns substantially upon the following question: When an applicant for life insurance makes truthful answers to all questions asked by the medical examiner, who fails to record them as given and omits an important part, stating that it is unimportant, can the beneficiary show the answers actually given, in order to defeat a forfeiture claimed by the insurer on account of the falsity of the answers as recorded, even if it was agreed in the application that the medical examiner, employed and paid by the

insurer only, should not be its agent, but solely the agent of the insured ?

The power to contract is not unlimited. While as a general rule there is the utmost freedom of action in this regard, some restrictions are placed upon the right by legislation, by public policy and by the nature of things. Parties cannot make a binding contract in violation of law or of public policy. They cannot in the same instrument agree that a thing exists and that it does not exist, or provide that one is the agent of the other and at the same time and with reference to the same subject, that there is no relation of agency between them. They cannot bind themselves by agreeing that a loan, in fact void for usury, is not usurious, or that a copartnership, which actually exists between them, does not exist. They cannot by agreement change the laws of nature, or of logic, or create relations physical, legal or moral, which cannot be created. In other words, they cannot accomplish the impossible by contract.

The parties to the policy in question could agree that the person who filled out part A of the application was the agent of the insured and not of the company. There is a difference in the nature of the work of filling out the blank to be signed by the insured, and that of filling out the blank furnished for the use of the medical examiner. The former is the work of the insured and may be done as well by one person as by another. He may do it himself or appoint an agent to do it for him. It is quite different, however, with the work of the medical examiner, because that requires professional skill and experience and the insurer permits it to be done only by .its own appointee. The insured can neither do that work himself, nor appoint a physician to do it, because the insurer very properly insists upon making the selection itself. The medical examiner was selected, employed and paid by the company. The insured had nothing to do with him, except to submit to an examination by him, as the expert of the company, and to answer the questions asked by him in behalf of the company. This he was forced to do in order to procure

insurance, for the company required him to undergo a medical examination by an examiner selected and instructed by itself, before it would act upon his application for a policy. He could neither refuse to be examined nor select the examiner, and he was not responsible if the latter was negligent or unfit for the duty assigned to him. He could not direct or control him, but the company could and did, for it required him to make the examination, fill out part B of the application blank and report the facts with his opinion. The insured made no contract with the examiner and was under no obligation to pay him for his services. The company, however, made a contract with him to do certain work for it and agreed to pay him for the work when done.

As between the examiner and the insured, the relation of principal and agent did not exist, while, as between the examiner and the company, that relation did exist by operation of law, yet it is claimed that as between the insured and the company, the examiner was the agent of the former, only, because he had so agreed, not with the examiner, but with the company itself. Under the circumstances, an agreement that the physician was the agent of the insured was like an agreement that the company, or its president, was his agent. It was in contradiction of every act of the parties and of every fact known to either. The law when applied to the facts made the physician the agent of the company and not of the insured, and can it be held that, as the insured agreed that the physician was his agent, he became such in spite of the law and the facts? This is not a case of agency of one party for one purpose and of another party for a different purpose, for the physician was employed for a single purpose only and that was to make a physical examination of the insured, ask him the questions furnished by the company, record his answers and report the result. They were not the questions of the insured, put to himself, to elicit facts for his use. He knew the facts. He did not need to question himself to find out what he knew, nor to employ an agent for that purpose. The questions were those of the company, carefully prepared for it by skillful

hands and furnished to its medical examiner to be asked so that it could learn what the insured knew about himself. It needed the facts for its use, and what was done by its own examiner to get the facts and report them to the company, was its work, done for its benefit, and in the course of its business. The answers were not volunteered, but were given in response to questions asked by the company, as much as if, impersonated, it had actually asked them as an individual. Whatever it told Dr. Langley to do for it, in the view of the law, it did itself. *Qui facit per alium, facit per se.* It appointed Dr. Langley its agent for the purpose named and he derived all his authority to act from the company, which could regulate his conduct by its rules and could provide for such security to protect its interests from the consequences of his neglect or default as it saw fit.

Can parties agree that facts, which the law declares establish a certain relation, not only do not establish that relation but establish directly the opposite? Can A appoint B his agent for a definite purpose and then agree with C that B is not the agent of A, but is the agent of C for that purpose, there being no agreement whatever between B and C?

An agency is created by contract, express or implied. It " is a legal relation by virtue of which one party, the agent, is employed and authorized to represent and act for the other, the principal, in business dealings with third persons. The distinguishing features of the agent are his representative character and his derivative authority." (Mechem on Agency, sec. 1; Story on Agency, sec. 3.) " To constitute agency there must be consent both of principal and of agent." (Wharton on Agency, sec. 1.) What was the contract between the company and the examiner? The defendant, being a corporation, could act only through agents. Having some work to do in the form of a medical examination, it requested Dr. Langley to do it. It created the relation of agency between him and itself by employing him, paying him, etc. It alone could discharge him and to it alone was he responsible for disobedience or negligence. It could con-

trol his conduct by any reasonable instructions, and hold him liable if he violated them. It prescribed certain questions that he should ask and required him to take down the answers in a blank prepared by itself. It could sue him if he did not do it properly, and he could sue the company if it did not pay him for doing it. Thus we have an agency between the company and the examiner established by mutual agreement, with the right on the one hand to instruct, to discharge and to hold liable for default, and on the other to compel payment for services rendered. Hence what the examiner did in the course of his employment the company did, and whahe knew from discovery while acting for it, the company knew.

What was the contract between the insured and the examiner? None whatever. The insured did not employ the examiner and the examiner did not agree to work for him. Neither was under any legal obligation or liability to the other. The insured could not instruct the doctor, nor discharge him, nor sue him for negligence, and the doctor could not sue the insured for compensation. The relation of principal and agent did not exist between them, either by virtue of any contract or by operation of law.

What was the contract between the insured and the insurer? With the relations above described as existing between the insurer and the examiner in full force, and in the absence of any legal relation between the examiner and the insured, an attempt was made by the insurer, by an agreement imposed upon the insured, to subvert the relation of its own examiner to itself and establish a relation between him and the insured, without the consent of either given to the other. There was no tripartite contract. While the contract between the doctor and the company was still in existence, the latter agreed with a third party only, that that contract did not in fact exist between the two parties who made it, but did exist between two parties who did not make it. This was not possible by any form of words, any more than to make black white, or truth falsehood. We think that the medical

examiner was the agent of the defendant in making the examination of the insured, recording his answers and reporting them to the company.

Sound public policy prohibits the company from stipulating for immunity from the consequences of its own negligence, or what is the same thing, the negligence of its agent. (*Rathbone* v. *N. Y. C. & H. R. R. R. Co.*, 140 N. Y. 48.) The manner of conducting the examination was, of necessity, intrusted to the judgment of the medical examiner to a great extent. His judgment might influence him to take down the answers in a general or in a particular way. In exercising his judgment he determined that certain answers were too trivial to be recorded. In making that determination he was not acting for the insured, but for the company, for it had furnished him with a blank and had invested him with power to take down the answers and, hence, with power to decide how they should be taken down. If he was negligent, or failed to do his duty in this regard, the company could not by an agreement, made in advance, cast the burden upon the insured, who did not select or employ him. His negligence was its own negligence, and it could not by contract make it the negligence of the insured, or relieve itself from the legal consequences thereof.

But, it is insisted, the insured warranted that the answers were true, and that they were correctly recorded. When the company issued the policy, however, it knew, through its medical examiner, that the answers as recorded were not literally true ; that the answers as given were not correctly recorded, and that this occurred through no fault of the insured. It could not take the money of the insured while he lived and, when he was dead, claim a forfeiture on account of what it knew at the time it made the contract of insurance, for that would be a fraud. (*Van Schoick* v. *Niagara Fire Ins. Co.*, 68 N. Y. 434; *O'Brien* v. *Home Benefit Society*, 117 N. Y. 310; *Kenyon* v. *Knights Templar & M. M. A. Association*, 122 N. Y. 247.)

The insured also agreed that " no information or statement

not contained in this application, and in the statements made to the medical examiner, received or acquired at any time by any person, shall be binding upon the company, or shall modify or alter the declarations and warranties made therein." The facts sought to be proved were contained in the oral statements made to the medical examiner, but assuming that recorded statements only were meant, the result would be an agreement that the company might perpetrate a fraud upon the insured by issuing a policy and accepting premiums thereon, knowing all the time that the contract was void, or voidable at its election. The law does not permit this, for it declares that the company is estopped from taking advantage of such a contract, because it would be against equity and opposed to public policy. We adopt, as expressing our own views upon the subject, the following language used by the Supreme Court of the United States in a case somewhat analogous: "If, however, we suppose the party making the insurance to have been an individual, and to have been present when the application was signed, and soliciting the assured to make the contract of insurance, and that the insurer himself wrote out all these representations and was told by the plaintiff and his wife that they knew nothing at all of this particular subject of inquiry, and that they refused to make any statement about it, and yet knowing all this, wrote the representation to suit himself, it is equally clear that for the insurer to insist that the policy is void because it contains this statement, would be an act of bad faith and of the grossest injustice and dishonesty. And the reason for this is that the representation was not the statement of the plaintiff, and that the defendant knew it was not when he made the contract, and that it was made by the defendant, who procured the plaintiff's signature thereto. It is precisely in such cases as this that courts of law in modern times have introduced the doctrine of equitable estoppel, or, as it is sometimes called, estoppel *in pais*.  *  *  *  Indeed the doctrine is so well understood and so often enforced that, if in the transaction we are now considering, Ball, the insurance

agent, who made out the application, had been in fact the underwriter of the policy, no one would doubt its applicability to the present case.   Yet the proposition admits of as little doubt that if Ball was the agent of the insurance company, and not of the plaintiff, in what he did in filling up the application, the company must be held to stand just as he would if he were the principal.   *   *   *   This principle does not admit oral testimony to vary or contradict that which is in writing, but it goes upon the idea that the writing offered in evidence was not the instrument of the party whose name is signed to it; that it was procured under such circumstances by the other side as estops that side from using it or relying on its contents; not that it may be contradicted by oral testimony, but that it may be shown by such testimony that it cannot be lawfully used against the party whose name is signed to it." (*Insurance Co.* v. *Wilkinson*, 13 Wall. 222.)

We think it is established by the weight of authority in this state that the medical examiner is the agent of the insurer in making the examination, taking down the answers and reporting them to the company ; that his knowledge, thus acquired, his interpretation of the answers given and his errors in recording them, are the knowledge, interpretation and errors of the company itself, which is estopped from taking advantage of what it thus knew and what it had thus done when it issued the policy and accepted the premiums. (*O'Farrell* v. *Metropolitan Life Ins. Co.*, 22 App. Div. 495 ; 44 App. Div. 554; 168 N. Y. 592; *O'Brien* v. *Home Benefit Society*, 117 N. Y. 310, 318; *Grattan* v. *Metropolitan Life Ins. Co.*, 92 N. Y. 274; *Grattan* v. *Metropolitan Life Insurance Co.*, 80 N. Y. 281; *Flynn* v. *Equitable Life Insurance Co.*, 78 N. Y. 568; *Whited* v. *Germania Fire Insurance Co.*, 76 N. Y. 415 ; *Sprague* v. *Holland Purchase Ins. Co.*, 69 N. Y. 128.)

The earlier cases of *Rohrbach* v. *Germania Fire Ins. Co.* (62 N. Y. 47) and *Alexander* v. *The Same* (66 N. Y. 464) involved the authority of a fire insurance broker or solicitor only, and were distinguished in *Whited* v. *Germania Fire Ins. Co.* (*supra*, pp. 419, 420), where the court said : "If the

procurer of the insurance is to be deemed the agent of the insured, and Harmon is to be deemed such procurer, he may not be taken into the service of the insurer as its agent also ; or, if he is so taken, the insurer must be bound by his acts and words when he stands in its place and moves and speaks as one having authority from it, and *pro hac vice*, at least, he does then rightfully put off his agency for the insured and put on that for the insurer."

In *Allen* v. *German American Ins. Co.* (123 N. Y. 6) the intermediary was also a mere broker and not the agent of the company, as distinctly appears on page 15, where the court said : " So far as it appears, Noble had no relations whatever with the defendant other than that he forwarded this paper-writing, which contained statements of the amount of insurance proposed for and of the privileges desired. He certainly appears to have been nothing more than an insurance broker, soliciting insurance business, and when, upon the acceptance of the risk, he received back a policy of the company for the plaintiff, his sole office was simply to deliver it for the company and to collect the premium. That is certainly not enough to constitute him an agent for the company with authority to bind it retroactively or presently in transactions relating to the insurance. Circumstances are wholly wanting from which we may presume the authority of an agent."

In the earlier *Grattan* case the medical examiner was instructed by the defendant to report the answers to the questions in the certificate in his own handwriting, but he failed to report one of the answers as given by the applicant. In an action on the policy the falsity of the answer, as recorded, was insisted upon as a defense, although the answer as given was absolutely true. The court, referring to the medical examiner, said : " He was, as medical examiner, charged with certain duties by the defendant and was acting in concert with the soliciting agent of the company. On the part of the life insured was entire good faith and truthfulness, and there is no reason to suspect any intentional unfairness on the part of the examiner. The omission was inadvertent. Is the com-

pany thereby released from its obligation ? Many decisions in this court show that it is not. (*Mowry* v. *Rosendale*, 74 N. Y. 360, and cases there cited.) Within the principles therein recognized as well established, the erroneous answers must be taken as the declaration of the defendant and in any controversy depending upon it, must, between the parties, be taken to be true. In this case the physician was not the agent to solicit insurance, but he had an act to perform in regard to it as the agent of the company. His written instructions were to write out the answers. In this instance he failed to do it correctly. The principle upon which it has been held that the company, and not the insured, is responsible for the error of the soliciting agent is equally applicable here. This question has been repeatedly considered by this court, and in the recent case of *Flynn* v. *Equitable Life Assurance Socy.* (9 N. Y. Wkly. Dig. 324; 78 N. Y. 568) was again before us. The point presented was similar to the one now under review. The decision was in conformity with the views above expressed, and the doctrine referred to must be deemed settled."

The *O'Farrell* case was strikingly like the one before us, so far as the point now involved is concerned. In that case the insured agreed that his application was " made, prepared and written " by himself, " or by his own proper agent," and that the company was " not to be held responsible for its preparation, or for anything contained therein, or omitted therefrom." He warranted that the answers made to the questions in both parts of the application, including that provided for the use of the medical examiner, were " strictly correct and wholly true ; " that they should " form the basis and become part of the contract of insurance," and that " any untrue answers " should " render the policy null and void." The policy itself referred to the application and declared that the statements therein contained were warranties and a part of the contract. Among the printed questions to be put by the medical examiner to the insured was the following : " Did any of the parents, grandparents, brothers or sisters of the

life proposed ever have consumption, or any pulmonary or scrofulous diseases?" To this question he answered that he did not know, but the physician recorded the answer as "No." A recovery, at first denied, was finally had upon the policy and it was sustained in both appellate courts. We divided in judgment and filed no opinion, but the following extract from the opinion of the Supreme Court upon the last appeal suggests the view that finally prevailed: "If it be accepted as a fact that the insured made answer to this question by stating that he did not know, then such fact became one known to the company, as it was known to its agent, and if it thereafter chose to deliver the policy and accept the payment of premiums thereon, it became bound according to the tenor of its terms." In that case, as an examination of the appeal book on the files of this court shows, the answer, as made to the medical examiner by the insured, was received upon the trial, notwithstanding the strenuous objections of the defendant, and without that evidence there could have been no recovery on the policy. The affirmance of the judgment by this court necessarily involved an adjudication that such evidence was properly received.

Upon the trial of the case in hand, the defendant's objection to similar evidence on similar grounds was sustained, but both upon principle and authority we think it should have been received. This conclusion requires a reversal of the judgment and the award of a new trial, with costs to abide the event.

PARKER, Ch. J. (dissenting). The decision about to be made is an unusually interesting one because it introduces a new feature into the law of contracts by which persons of sound and open minds and honest purposes are cut off in one direction from freedom of contract, in that they may not agree that an intermediary shall for all purposes of the contract be deemed the agent of one of the parties if some court be of the opinion that he was the agent of the other; and this is to be held notwithstanding this court, in *Allen* v. *German*

*Am. Ins. Co.* (123 N. Y. 6, 13), in speaking of a similar provision in a contract of insurance, said : " Parties may insert any provisions they choose in contracts, provided they violate none of the rules of law, and they should all be given their appropriate and intended effect."

The underlying reason prompting this decision received both consideration and condemnation in *Maier* v. *Fidelity Mut. Life Assn.* (78 Fed. Rep. 566), by Mr. Justice HARLAN, writing for the Circuit Court of Appeals of the sixth circuit, his associates concurring. In that case an application blank was erroneously filled up by an agent of defendant, for whose neglect or wrong plaintiff contended the defendant should not be advantaged, and the court said : " But here the assured was distinctly notified by the application that he was the party held as warranting the truth of his statements, ' by whomsoever written.' Such was the contract between the parties, and there is *no reason in law or in public policy* why its terms should not be respected and enforced in an action on the written contract. It is the impression with some that the courts may, in their discretion, relieve parties from the obligation of their contracts whenever it can be seen that they have acted heedlessly or carelessly in making them. But it is too often forgotten that in giving relief, under such circumstances, to one party, the courts make and enforce a contract which the other party did not make or intend to make."

In the case at bar the defendant proved a breach of warranty which forfeited the policy. The facts thus warranted are found in that part of the application signed by the medical examiner and the contention of the plaintiff is that Dr. Langley, the medical examiner, was the agent of the defendant, and hence it may be shown that the insured communicated to him certain facts about his life which the doctor did not write down and which were in conflict with those written down and that this may be done notwithstanding the application, which forms part of the contract, contains this provision :

" It is hereby declared, agreed and warranted by the undersigned that the answer and statements contained in the forego-

ing application and *those made to the medical examiner as recorded* in parts 'A' and 'B' of this sheet, together with this declaration, shall be the basis and become part of this contract of insurance with the Metropolitan Life Insurance Company; *that they are full and true and are correctly recorded, and no information not contained in this application and in the statements made to the medical examiner* ('A' and 'B' respectively), received or acquired at any time by any person shall be binding upon the company or shall modify or alter the declaration and warranties made therein; *that the person who wrote in the answers and statements were and are our agents for the purpose and not the agents of the company; and that the company is not to be taken to be responsible for its preparation or for anything contained therein or omitted therefrom;* that any false, incorrect or untrue answer, any suppression or concealment of facts in any of the answers, any violation of the covenants, conditions or restrictions of the policy, any neglect to pay the premium on or before the day it becomes due shall render the policy null and void and forfeit all payments made thereunder." ·

At the close of the statements of the medical examiner which are to be found in Exhibit "B" is the following: "I hereby declare that the application to the Metropolitan Life Insurance Company, on the reverse of this sheet, for an insurance on my life, was signed by me, and that I renew and confirm my agreement therein as to the answers given above to the medical examiner, and I hereby declare that said answers are correctly recorded." This was followed by the signature of the applicant.

It appears, therefore, by the terms of the contract that the insured declared that the medical examiner had correctly recorded the answers given to the questions, and it would seem that in the absence of fraud, of which there is no pretense in this case, that the insured would be bound by the answers written out by the medical examiner although he were in fact the defendant's agent and there was no agreement on the part of the insured and the company that the physician

should, for the purposes of the contract, be deemed the agent of the insured.

Now, notwithstanding his agreement renewed and confirmed the answers as written out by the medical examiner, those answers were in fact untrue in important particulars, so important that it is quite likely that if the questions had been answered truly a policy would not have been issued. But that fact, if it be such, is one of no legal importance in the disposition of this case. By the terms of the application it was agreed that the insured warranted the truth of the answers as they appeared in the application and further that if untrue the policy should be null and void.

Unless the right of insurance companies and individuals to contract with each other as they will may be abridged by the courts this judgment must be affirmed. That the legislature may provide a standard form for life insurance policies is unquestioned, but the power is legislative and no attempt should be made indirectly to exercise it by the courts, which would best discharge their duty in the end, as experience proves, by giving full force and effect to the contracts of all parties.

The method by which the plaintiff sought to relieve the contract from the effect of the several untrue answers in the application upon which the defendant acted, was to prove that the insured made very different answers to Dr. Langley, the physician who undertook to write down the replies, to prove, in fact, that the insured told Dr. Langley everything which the defendant has now proved about his physical condition, and then to ask the court to hold, notwithstanding the insured had contracted to the contrary, that Dr. Langley was the defendant's agent, and hence that the defendant is estopped from denying that it knew the whole truth about the insured's prior state of life.

The defendant's counsel contended, and so far the courts have sustained him, that his client had issued its policy in reliance on the truth of the statements contained in the application, and that Sternaman, the applicant, had in terms

contracted that it might do so, and that if any of the answers should prove to be untrue it should render the policy null and void.    He asserted the right of his client to the protection of the law in the enforcement of its contract and pointed out the necessity, according to his client's view, of the incorporation into such contracts of a provision that the applicant for insurance shall be held to warrant the truth of all answers no matter by whom written and although the writer be in the service of the company.

The reasons presented in support of defendant's contention are briefly stated in the language of Mr. Justice Williams in *Bernard* v. *United Life Ins. Assn.* (14 App. Div. 142), in which all his associates concurred.    The aim of the defendant is "to protect itself in two respects by its policy : *First.* Against any attempt by the agent and the insured conspiring together to defraud the company, by presenting to it an application containing false statements and answers, and securing a policy thereon, which would not have been issued had the truth been known to the company.    *Second.* Against any attempt by the beneficiary, after the death of the assured, by parol evidence, to avoid the effect of false statements and answers in an application upon which a policy was actually issued."    These reasons seem to be well grounded, for it is not in the public interest that frauds should be permitted for the benefit of individuals, however needy they may be.

But it matters not whether the reasons be sound or not, the defendant has a right to issue policies of insurance to such persons and upon such terms as it chooses, so long as it violates no provision of law, and he who would be insured must accept its contracts upon its own terms or go elsewhere for his insurance.

These parties agreed that for the purposes of the application for the policy of insurance the medical examiner who wrote down the answers was to be regarded by both parties as the agent of the applicant, and one of the objects of that stipulation was to assure the defendant that it could rely upon the truth of the answers contained in the application and that it

could issue a policy without fear that it might afterwards be claimed that it was bound by some information that its agent had obtained that was in conflict with the answers in the application. And this does not seem at all unfair to the applicant, for he signs the application and is carefully advised of the importance of the truth of his answers, while it is certainly no more than fair to the defendant that it should have the whole truth before it when determining whether the risk is one that it should accept.

But in any event the defendant has the right to insist as a condition of its issuing the policy that an applicant shall agree that for the purposes of the application and the issuance of the policy whoever fills up the blanks, whether he be in the employ of the defendant, or a soliciting agent, or one occasionally paid by it for making a medical examination, shall for that purpose be deemed the agent of the applicant. If the applicant does not care to so agree he need not make the application. But if he does make it and incorporates that agreement into his application and upon the strength of it the policy is issued, he is bound by it and the defendant is entitled to the full protection of it, and so this court and the Supreme Court of the United States have unvaryingly held.

*Rohrbach* v. *Germania Fire Ins. Co.* (62 N. Y. 47) was an action on a policy issued for insurance against fire. The facts stated in the application were by its terms made warranties as stated therein. They proved to be untrue and it was held that a recovery could not be had, although the applicant had truly stated the facts to the agent who filled up the application, and the reason for it was, as in this case, that the policy provided in effect that the agent should be deemed the agent of the insured, and not of the company, and it was held that the knowledge of the agent was immaterial and could not affect the warranty. In the course of the opinion the court said : " It is hereupon urged by the plaintiff that the errors and omissions were those of the defendant. But the plaintiff and defendant have in the policy, the contract between them, expressly agreed that Brand should be deemed the agent of

the plaintiff and not of the defendant under any circumstances. * * * But we must take the contracts of the parties as we find them, and enforce them as they read. By the one before us the plaintiff has so fettered himself as to be unable to retain, as the case now stands, the real essence of his agreement. Though he has frankly and fully laid before the actor between him and the defendant all the facts and circumstances of the case, he is made responsible for error in legal conclusions which he never formed, and which were arrived at by one in whom he trusted and whom he supposed to stand in the place of the defendant. * * * Held to the letter and substance of his contract, the plaintiff made a breach of warranty and condition precedent, upon the truth of which his contract rested, and for that reason may not recover in this action, as the facts now stand."

The *Rohrbach* case was followed by the *Alexander Case* (66 N. Y. 464). That contract contained the following clause: " It is a part of this contract that any person other than the assured who may have procured this insurance to be taken by this company shall be deemed to be the agent of the assured named in this policy and not of this company under any circumstances whatever or in any transaction relating to this insurance." The court (Judge RAPALLO writing) on the assumption, as he said, that the agent, Brewster, was the agent of the company for the purposes of the application, said: " But the policy now in question contains an express agreement that any person other than the assured who may have procured the insurance to be taken by the company shall be deemed to be the agent of the assured, and not of the company under any circumstances whatever, or in any transaction relating to the insurance. In *Rohrbach* v. *Germania Fire Ins. Co.* (62 N. Y. 47, *supra*) this court decided that such a clause was operative and precluded the insured from claiming that the company was bound by the knowledge of a similar agent through whom the policy had been procured."

The last utterance on the subject in this court is to be found in the *Allen Case* (123 N. Y. 6, *supra*). In that case,

as in this one, the court was asked to draw the inference of fact that the person who did the writing was the agent of the company (notwithstanding the stipulation that he should be deemed the agent of the applicant for all the purposes of the contract) and to thrust its inference of fact into the contract in the place of the provision declaring him to be the agent of the insured. But the court repudiated the plaintiff's claim, saying, among other things, Judge GRAY writing: " Then, too, the policy contained the provisions that the company would not be bound by any acts of, or statements of, or to, any agent, or ·other person, which were not contained in the policy, and, further, that any person other than the assured procuring the policy, or any renewal thereof, should be deemed the agent of the assured, and not of the company. To these conditions the plaintiff's assent is presumed to have been given by his acceptance of the policy, and there is no reason why he should not be bound by them. If Noble had been the agent of the defendant, it was perfectly competent to stipulate by this contract of insurance that anything done by, or known to, the agent should be without effect upon the contract, unless made known in writing to the principal." (Citing authorities above quoted.)

The parties were competent to make that stipulation, said this court in that case, but they are not competent to make the stipulation in this case, it is now said. No attempt, however, is made to give a reason for holding that the parties are competent to make one but not the other. None can be given, I assume, that will persuade any mind.

A reversal in this case will, as a matter of fact, overrule *Allen's* case, and it would seem as if the court's assertion in that case of competency on the part of the parties to contract as they did should be opposed with something more than a contrary assertion in this case ; that, at least, the court should point out what it is that prevents two men of sound mind, dealing with each other honestly, from agreeing that for all the purposes of a particular contract a person who shall act as the agent for one shall be deemed the agent of the other.

In the United States courts the view hitherto taken by this court has been adopted. (*N. Y. Life Ins. Co.* v. *Fletcher*, 117 U. S. 519; *Maier* v. *Fidelity Mut. Life Assn.*, 78 Fed. Rep. 566, *supra*.) The *Fletcher* case was an action brought upon a life insurance policy, the application for which stipulated that the statements therein were warranties, and that no statement to the agent not contained in the application and thus transmitted to the company should be binding upon it. The agent, without the knowledge of the applicant, wrote down false answers and the applicant signed, without reading the application. It was held that the policy was void and no recovery could be had thereon, notwithstanding the insistence of counsel that, inasmuch as the applicant never in fact made the false statements and representations to which his name was signed, but did truthfully answer the agent, the company which employed the agent should suffer rather than the applicant. From the opinion in that case we quote: "It was his duty to read the application he signed. He knew that upon it the policy would be issued, if issued at all. It would introduce great uncertainty into all business transactions if a party making written proposals for a contract, with representations to induce its execution, should be allowed to show, after it had been obtained, that he did not know the contents of his proposals, and to enforce it, notwithstanding their falsity as to matters essential to its obligation and validity. Contracts could not be made, or business fairly conducted, if such a rule should prevail; and there is no reason why it should be applied merely to contracts of insurance. There is nothing in their nature which distinguishes them in this particular from others. But here the right is asserted to prove not only that the assured did not make the statements contained in his answers, but that he never read the application, and to recover upon a contract obtained by representations admitted to be false, just as though they were true."

The *Maier Case* (78 Fed. Rep. 566, *supra*) has already been briefly referred to, and other reference to it will not be had except to say that the contention of the plaintiff in that

case was that the questions were propounded and answers written by an agent of the insurance company who knew all of the facts, but suppressed them when preparing the answers, and that hence the company was estopped from denying that it possessed the knowledge which he had. But the court held that the insured, having contracted otherwise, should be bound by his contract, in a very careful opinion written by Mr. Justice HARLAN, in which he cites, among other cases, in support of the decision made, the *Fletcher Case* (117 U. S. 519, *supra*).

This position is followed in a carefully considered opinion by the Appellate Division of the first department in *Bernard* v. *United Life Ins. Assn.* (14 App. Div. 142, *supra*) and by the fourth department in *Hamilton* v. *Fidelity Mutual Life Assn.* (27 App. Div. 480), and there are no later authorities in this court or in the United States Supreme Court to which our attention has been called which are in conflict with the decisions to which reference has been made.

Appellant's counsel cites *Sprague* v. *Holland Purchase Assn.*, (69 N. Y. 128) and *Whited* v. *Germania Fire Ins. Co.* (76 N. Y. 415). The *Sprague* case, the opinion in which was written by Judge FOLGER, who also wrote in the *Rohrbach* case, is distinguishable from the latter in two respects, which will be sufficiently pointed out by taking extracts from the opinion. The first is: " Nor will the defendant's position hold, that Bowers was the agent of the plaintiff therein. There is the clause, to be sure, in the policy, that he who procures the insurance from the defendants shall be held by contract to be the agent of the plaintiff. *There is, however, the other condition hostile thereto, imposed by the defendants themselves, that the application must be made out by an authorized agent of them.* And the referee finds, and so is the proof, that Bowers was the agent of the defendant." And the second extract is: " This defense of the defendant rests entirely upon the statement in the paper called the application. There is no finding of fact which permits us to call that the application of the plaintiff, and hence his war-

ranty. There is no breach of warranty, therefore, by him, for he has made no warranty. The case is entirely without findings of fact to sustain the position of the defendants."

The opinion in the *Whited* case, Judge Folger again writing, distinctly approves of the *Rorhbach* case, which is controlling in the case at bar. After saying that it would be fatuous to deny that Harmon was the agent of the defendant were it not for a clause in the policy upon which the defendant builds, the opinion continues : " The clause is in this wise : That any person other than the assured, who may have procured the insurance to be taken, shall be deemed to be the agent of the assured, and not of the company, under any circumstances whatever, or in any transaction relating to this insurance. That clause we have held to be forceful, in *Rohrbach* v. *Germania Fire Ins. Co.* (62 N. Y. 47) and *Alexander* v. *Same Defendant* (66 N. Y. 464). We have not held it so, as yet, further than the scope of the facts in those cases. \* \* \* That case [referring to the *Rohrbach* case] dealt with matters before the issue of the policy," meaning thereby that the stipulation by which the plaintiff agreed that the answers were true and were made by him, and that if written out by another that other was his agent and not the agent of the company, was incorporated into the application upon which the company acted in determining whether to issue a policy, in the *Rohrbach* case, whereas in the *Whited* case the policy was not issued on the strength of a partly written and partly printed application, and the provision as to agency was merely incorporated in the policy which was procured through one Harmon, who countersigned it as defendant's agent. That policy was renewed twice, each renewal receipt being signed by the defendant's president and each containing this clause : " Not valid unless countersigned by the duly authorized agent of the company." Each receipt was countersigned by Harmon, who received the premiums and forwarded them to the defendant. On applying for a third renewal plaintiff informed Harmon that he had sold the premises and that his interest was as mortgagee. Harmon received the premium, gave

another renewal receipt and said he would make it all right. The court held that in the *renewal of the policy*, not in obtaining it, Harmon was the agent for the defendant and it was bound by his acts.

If there are any other authorities in this court which, even as a matter of first impression, appear to militate against the position taken by this court and the United States courts in the cases cited *supra*, they have not been brought to my attention. The *Grattan Cases* (80 N. Y. 281 and 92 N. Y. 274), and *Flynn* v. *Equitable Life Ins. Co.* (78 N. Y. 568), and *O'Brien* v. *Home Benefit Society* (117 N. Y. 310) certainly do not, for they have not even the merit of being in point. The question presented in this case was not raised in those cases, and could not have been because in none of them did the contract contain a stipulation that the medical examiner or other representative of the company should be deemed to be the agent of the insured.    ·

Since the foregoing was written I have found the case of *Northern Assurance Co.* v. *Grand View Buildg. Assn.* (22 Sup. Ct. Rep. 133), decided by the U. S. Supreme Court less than two months ago, which contains an exhaustive review of the cases both in England and this country which have grown out of attempts through one device or another to break down the written contract by parol evidence. In that case the attempt was made to show knowledge in the company's agent of a fact denied in the policy, and because of such agency to charge the company with knowledge. The court in repudiating the plaintiff's contention pays critical attention to some of the authorities in this state and demonstrates, as I think, that both on principle and on the authority of nearly all jurisdictions in this country, as well as England, the stipulations of this contract should control.

The judgment should be affirmed, with costs.

O'BRIEN, BARTLETT, HAIGHT and MARTIN, JJ., concur with VANN, J.; GRAY, J., concurs with PARKER, Ch. J.

Judgment reversed, etc.